UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| DOROTHY ELLEN TREVARTON, WESLEY MURDOCK, JENNIFER MURDOCK, BRUCE and LINDA MURDOCK, husband and wife, and WILLIAM A. MILLER and LISA MILLER, husband and wife,<br><br>           Plaintiffs,<br><br>  vs.<br><br>STATE OF SOUTH DAKOTA and SOUTH DAKOTA GAME, FISH, AND PARKS,<br><br>           Defendants. | CIV. 14-5031-JLV<br><br>ORDER |

**INTRODUCTION**

In Trevarton, et al. v. State of South Dakota, et al., CIV. 14-5031, plaintiffs' amended complaint seeks to quiet title to certain real property in Fall River County, South Dakota. (Docket 13). Collectively, the properties owned by plaintiffs are referred to as the "Murdock Ranch." Id. ¶ 14. In Miller, et al. v. State of South Dakota, et al., CIV. 14-5032-JLV, plaintiffs' complaint seeks to quiet title to property in Fall River County, South Dakota. (Docket 13). Plaintiffs' property is referred to as the "Miller Ranch." Id. ¶ 6. The court consolidated the cases as they involve "common questions of fact and law." (Docket 25). Unless otherwise indicated, all references to the record will be to documents filed in Trevarton, CIV. 14-5031.

Plaintiffs seek to quiet title to their ranch properties and ask the court to determine "that all right, title, interest, and estate in the railroad easement originally owned by the Grand Island Railroad through [plaintiffs' properties] has been abandoned and Plaintiffs . . . have resumed complete fee ownership, free of any right, claim, interest, or encumbrance by Defendants."  (Docket 13 ¶ 40(a)). Plaintiffs also seek declaratory "judgment that Defendants stand in the shoes of their railroad predecessors-in-interest concerning easement rights, whereby Defendants have no lawful right to criminally prosecute Plaintiffs and their employees from [sic] the use of their property."  Id. ¶ 40(e).

Defendants filed a renewed motion to dismiss.  (Docket 18).  Defendants' motion to dismiss is premised on Fed. R. Civ. P. 12(b)(1), lack of subject matter jurisdiction, and Fed. R. Civ. P. 12(b)(6), failure to state a claim.  Id. at p. 1.  In the alternative, defendants move for summary judgment under Fed. R. Civ. P. 12(d) and Fed. R. Civ. P. 56.  Id.

For the reasons stated below, defendants' motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) is granted.

## DISCUSSION

Rule 12 provides in part:

(b)   . . . a party may assert the following defenses by motion:

  (1)  lack of subject-matter jurisdiction;
  . . . .
  (6)  failure to state a claim upon which relief can be granted . . . .

> A motion asserting any of these defenses must be made before pleading if a responsive pleading is allowed. . . . No defense or objection is waived by joining it with one or more other defenses or objections in a responsive pleading or in a motion.

Fed. R. Civ. P. 12(b)(1) & (6). "Motions to dismiss for lack of subject-matter jurisdiction can be decided in three ways: at the pleading stage, like a Rule 12(b)(6) motion; on undisputed facts, like a summary judgment motion; and on disputed facts." Jessie v. Potter, 516 F.3d 709, 712 (8th Cir. 2008).

Under a Rule 12(b)(1) motion to dismiss, a defendant has the right to challenge the "lack of subject-matter jurisdiction . . . ." Fed. R. Civ. P. 12(b)(1). "Jurisdictional issues, whether they involve questions of law or of fact, are for the court to decide." Osborn v. United States, 918 F.2d 724, 729 (8th Cir. 1990).

"In order to properly dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the complaint must be successfully challenged on its face or on the factual truthfulness of its averments." Titus v. Sullivan, 4 F.3d 590, 593 (8th Cir. 1993) (internal citation omitted). "In a facial challenge to jurisdiction, all of the factual allegations concerning jurisdiction are presumed to be true and the motion [to dismiss] is successful if the plaintiff fails to allege an element necessary for subject matter jurisdiction." Id. (internal citation omitted). While considering a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, the court must "accept all factual allegations in the pleadings as true and view them in the light most favorable to the nonmoving party." Great Rivers Habitat Alliance v. Federal Emergency Management Agency, 615 F.3d 985, 988 (8th Cir. 2010). The court "has authority to consider matters outside

3

the pleadings when subject matter jurisdiction is challenged under Rule 12(b)(1). . . . This does not . . . convert the 12(b)(1) motion to one for summary judgment." Harris v. P.A.M. Transp., Inc., 339 F.3d 635, 638 (8th Cir. 2003). "The district court may take judicial notice of public records and may thus consider them on a [Rule 12(b)(1) motion to dismiss." Stahl v. U.S. Department of Agriculture, 327 F.3d 697, 700 (8th Cir. 2003).

While the court must accept plaintiffs' "factual allegations . . . [it] need not accept as true their legal conclusions even if they are cast in the form of factual allegations . . . ." Ashley v. U.S. Department of Interior, 408 F.3d 997, 1000 (8th Cir. 2005) (internal citations and quotation marks omitted). "The burden of proving federal jurisdiction . . . is on the party seeking to establish it, and this burden may not be shifted to the other party." Great Rivers Habitat Alliance, 615 F.3d at 988 (internal quotation marks and brackets omitted).

## FACTUAL ALLEGATIONS

Plaintiffs' amended complaint contains the following factual allegations relevant to the defendants' motion to dismiss. Sometime around 1897, the United States granted an easement over plaintiffs' properties to the Grand Island and Wyoming Central Railroad Company ("Grand Island Railroad") under the General Railroad Right of Way Act of 1875, ("1875 Right of Way Act"), 43 U.S.C. § 934. (Docket 13 ¶ 15). Later that year, the Grand Island Railroad transferred its easement rights to the Chicago, Burlington and Quincy Railroad Company ("Quincy Railroad"). Id. ¶ 16. In 1970, Quincy Railroad merged with other

4

railroad companies to create the Burlington Northern Railroad Company ("Burlington").  Id. ¶ 17.

The Burlington operated the railroad in Custer County and Fall River County until 1986.  Id. ¶ 18.  In July 1987, the Burlington filed a petition for exemption with the Interstate Commerce Commission ("ICC") for regulatory approval to abandon the railroad in these counties.[1]  Id. ¶ 20.  On November 13, 1987, the ICC granted the Burlington permission to abandon the rail line subject to two conditions requiring compliance with: (1) employee-protection conditions; and (2) the National Historic Preservation Act before salvage of the line could be completed.  Id. ¶¶ 20-21.  On December 27, 1988, the ICC entered an order permitting the Burlington to proceed with salvage of the rail line.  Id. ¶ 22.

On February 6, 1989, the ICC entered a decision re-opening the abandonment proceedings, revoking its abandonment authorization and approving the "interim trail use/rail banking" of the rail line if an "interim trail use/rail banking" agreement was reached between the Burlington and the State of South Dakota by August 8, 1989.  Id. ¶ 23; see also Docket 19-1 (the "ICC February 6, 1989, Decision").  In July 1989, the Burlington attempted to enter plaintiffs' property to salvage and dispose of the remnants of the rail line. (Docket 13 ¶ 27).  On August 8, 1989, the ICC entered a decision extending the

---

[1] The ICC was abolished as of January 1996 and its functions were assumed by the Surface Transportation Board ("STB").  49 U.S.C. § 701 *et. seq.* Because all activities which are the subject of plaintiffs' complaint occurred before 1996, the court will refer to the "ICC" for continuity.

deadline for the Burlington and the State of South Dakota to reach an "interim trail use/rail banking" agreement to December 31, 1989.  (Docket 13 ¶ 24; see also Docket 19-2 (the "ICC August 8, 1989, Decision")).

On December 26, 1989, the Burlington and the State of South Dakota entered into an "interim trail use/rail banking" agreement.  (Docket 13 ¶ 25; see also Docket 1-8 (the "Agreement")).  In the Agreement, the Burlington stated it had not "effected the abandonment of all or any portion of the said right-of-way." (Docket 1-7 at p. 1).  On December 29, 1989, the Burlington quitclaimed to the State of South Dakota, through the Department of Game, Fish, and Parks ("GF&P"), the Burlington's interest in the railroad easement and right-of-way. (Docket 13 ¶ 26; see also Docket 1-8 (the QC Deed")).  In about 1998, defendants named the railroad easement as part of the George S. Mickelson Trail.[2]  (Docket 13 ¶ 28).

Plaintiffs allege that since 1998 defendants have directed plaintiffs not to operate motorized vehicles on the Mickelson Trail crossing their property.  Id. ¶ 30.  Plaintiffs allege Mr. Murdock and his hired hand were convicted of criminal offenses associated with their use of the Mickelson Trail as part of the operation of his ranch.  Id. ¶ 32.  Plaintiffs also allege Mr. Miller was criminally prosecuted for using the Mickelson Trail for ranching purposes.  (CIV. 14-5032, Docket 13 ¶ 24).

---

[2]The Mickelson Trail is a recreational trail for non-motorized vehicles and hikers beginning in Deadwood, South Dakota, and ending approximately 110 miles to the south in Edgemont, South Dakota.  See George S. Mickelson Trail at gfp.sd.gov/stateparks/directory/mickelson-trail.

Plaintiffs seek a quiet title decision from the court determining that the interests of the Burlington in the railroad easement were abandoned and that plaintiffs possess "complete fee ownership, free of any right, claim, interest, or encumbrance by Defendants."  (CIV. 14-5031, Docket 13 ¶ 40(a)).  In the alternative, plaintiffs seek a declaratory judgment defining the parties' relative rights to the use of the railroad easement.  Id. ¶ 40(e).

### RULE 12(b)(1): SUBJECT MATTER JURISDICTION

"The threshold inquiry in every federal case is whether the court has jurisdiction and we have admonished district judges to be attentive to a satisfaction of jurisdictional requirements in all cases."  Rock Island Millwork Co. v. Hedges-Gough Lumber Co., 337 F.2d 24, 26-27 (8th Cir. 1964).  "Lack of jurisdiction of the subject matter of litigation cannot be waived by the parties or ignored by the court."  Id. at p. 27.  "A federal court has jurisdiction to consider its own subject matter jurisdiction."  Robins v. Ritchie, 631 F.3d 919, 930 (8th Cir. 2011).

The parties acknowledge a railroad line cannot be abandoned without approval of the ICC.  (Dockets 19 at p. 4; 20 at p. 11).  Plaintiffs argue the ICC decisions in 1988 constituted a complete abandonment by the Burlington. (Docket 20 at p. 10).  "Plaintiffs argue that abandonment of the railroad easement occurred *before the ICC authorized railbanking* on February 6, 1989." Id. (italics in original).  Plaintiffs conclude that because abandonment occurred before the ICC February 6, 1989 Decision, the ICC was without jurisdiction to

7

either revoke its 1988 decision or to extend the time under which the ICC would retain jurisdiction.  Plaintiffs assert that "[w]hen the ICC no longer has jurisdiction, it cannot somehow prohibit abandonment or create new property rights by undoing the abandonment."  Id. at p. 11 (internal quotation marks and bracketing omitted).

Defendants counter that plaintiffs' "argument is a direct attack on the ICC's finding that it did indeed have jurisdiction to reopen the proceedings and issue the NITU (Notice of Interim Trail Use) and the ICC's subsequent issuance of an extension allowing Burlington Northern Railroad (BN) and South Dakota Game, Fish and Parks (GF&P) to negotiate an interim trail use/rail banking agreement."  (Docket 19 at p. 4).  Defendants argue the court is "without jurisdiction to consider a challenge to the ICC's Order granting a NITU and providing Defendants full authority for the management of the Mickelson Trail."  (Docket 23 at p. 5).

After referencing the two precedent conditions to abandonment discussed above, the ICC February 6, 1989, Decision noted "[b]y decision dated January 4, 1989, the Commission removed the condition imposed in the November 23 [1987] decision preventing [the Burlington] from salvaging or disposing of the . . . rail line.  This decision was effective on February 3, 1989."  (Docket 19-1 at p. 1).  The ICC February 6, 1989, Decision continued: "here the Commission retained jurisdiction over the entire ROW [right-of-way] as a result of its November 23 imposed historic preservation condition.  [The Burlington]

8

indicates that, as a result of the November 23 decision, it has discontinued operations on the line, but has not effected abandonment."  Id.  The ICC found "there has not been a full abandonment.  We retained jurisdiction over the line because of the historic preservation condition."  Id. at p. 2.  Based on these findings, the ICC acted to "reopen the proceedings, revoke the exemption to the extent necessary to implement trail use/rail banking and issue a NITU . . . for the . . . line."  Id.

The ICC February 6, 1989, Decision then allowed the Burlington and the State of South Dakota until August 8, 1989, to consummate an interim trail use/rail banking agreement.  Id.  Prior to the expiration of that directive, the ICC granted the parties an extension until December 31, 1989, to complete the agreement.  (Docket 19-2 at p. 2).  The Agreement was executed on December 26, 1989.  (Docket 1-7).

Plaintiffs argue Marvin M. Brandt Revocable Trust v. United States, ___ U.S. ___, 134 S. Ct. 1257, 1265 (2014) controls this case.  (Docket 20 at pp. 11-12).  Plaintiffs assert that "once authority to abandon has been granted and abandonment has occurred, 'the easement disappears, and the landowner[s] resume[] [their] full and unencumbered interest in the land.' "  Id. at p. 12 (quoting Marvin M. Brandt Revocable Trust, 134 S. Ct. at 1265).  Plaintiffs' reliance on Marvin M. Brandt Revocable Trust is misplaced.  In that case, after receiving Surface Transportation Board approval to abandon the right-of-way, the railroad "completed abandonment in 2004."  Marvin M. Brandt Revocable

9

Trust, 134 S. Ct. at 1263. The question before the United States Supreme Court was: "[W]hat happens to a railroad's right of way granted under a particular statute—the General Railroad Right–of–Way Act of 1875—when the railroad abandons it: does it go to the Government, or to the private party who acquired the land underlying the right of way?" Id. at 1260. The Supreme Court concluded that "if the beneficiary of the easement abandons it, the easement disappears, and the landowner resumes his full and unencumbered interest in the land." Id. at 1265.

To be clear in the present case, the ICC withdrew abandonment authority and the Burlington never completed the abandonment process. (Docket 19-1 at p. 2); see also (Docket 19-2 at p. 1). "Although the [plaintiffs] . . . characterize this lawsuit as a "quiet title" action, it is in essence a collateral attack on the ICC's order authorizing interim trail use on the right-of-way." Grantwood Village v. Missouri Pacific R.R. Co., 95 F.3d 654, 657 (8th Cir. 1996). "[A] challenge to [South Dakota's] interest in the right-of-way necessarily includes a review of the ICC's Decision." Id. "[T]he ICC has exclusive and plenary authority to determine whether a rail line has been abandoned . . . ." Id.

"[C]ircuit courts (other than the Federal Circuit) have exclusive jurisdiction over any action to enjoin, suspend, or determine the validity of an ICC order. . . . No other court would have jurisdiction to review an ICC decision . . . ." Id. at 658 (citing 28 U.S.C. § 2342(5) and referencing Glosemeyer v. Missouri–Kansas–Texas R.R., 879 F.2d 316, 320 (8th Cir.1989)). As in

10

Grantwood Village, plaintiffs' "attacks on the ICC's Decision are . . . foreclosed because the [plaintiffs] failed to make these arguments to the ICC and failed to file a petition for judicial review within sixty days of the ICC's decision of [February 6, 1989] as required by . . . 28 U.S.C. §§ 2341 et seq; see also 28 U.S.C. § 2321."  Id.  Plaintiffs have "waived any challenge to the validity of the ICC's order."  Id.

The court does "not have jurisdiction to review the ICC's decision."  Id. See also Fritsch v. Interstate Commerce Commission, 59 F.3d 248, 250-51(D.C. Cir. 1995) ("Under 28 U.S.C. § 2344 (1994), a party seeking to challenge a final ICC order must file a petition for review within 60 days of entry of that order."); Baros v. Texas Mexican Ry. Co., 400 F.3d 228, 235 (5th Cir. 2005) ("Because [the railroad's] abandonment authorization was conditional, the district court correctly determined that the STB [ICC] retained exclusive and plenary jurisdiction over the line to determine whether there has been an abandonment sufficient to terminate its jurisdiction . . . . Consequently, the court correctly concluded that it did not have jurisdiction to decide whether [the railroad] or its successors in interest abandoned the line.").

Plaintiffs argue that even if the district court does not have authority to declare the easement abandoned, the court should determine their rights to the use of the real property subject to the easement.  (Docket 20 at p. 2).  Plaintiffs ask the court to "determine[] the relative property rights of the parties . . . ."  Id.

11

The 1875 Right of Way Act is the source of the original easement which granted the railroad company "the exclusive use and possession of its right of way, and that the owner of the servient estate has no right to occupy the surface of the land conveyed for a right of way, in any mode, or for any purpose, without the railroad company's consent."  Midland Valley R. Co. v. Sutter, 28 F.2d 163, 165 (8th Cir. 1928) (string citations omitted).  See also State of Wyoming v. Udall, 379 F.2d 635, 640 (10th Cir. 1967) (easement granted to the railroad included the right to exclusive use and possession in perpetuity) (referencing Midland Valley Railroad Co., 28 F.2d at 168).  The ICC, and now the STB, continues to maintain exclusive and plenary jurisdiction over the line though railbanking and the implementation the National Trails System Act (the "Trails Act"), 16 U.S.C. Ch. 27, and specifically 16 U.S.C. § 1247(d).  "If a State, political subdivision, or qualified private organization is prepared to assume full responsibility for management of such rights-of-way and for any legal liability arising out of such transfer or use, and for the payment of any and all taxes that may be levied or assessed against such rights-of-way, then the [STB] Board shall impose such terms and conditions as a requirement of any transfer or conveyance for interim use in a manner consistent with this chapter, and shall not permit abandonment or discontinuance inconsistent or disruptive of such use."  16 U.S.C. § 1247(d).  "Absent a determination of abandonment, the rail property will remain within the STB's jurisdiction."  Nebraska Trails Council v. Surface Transportation Bd., 120 F.3d 901, 904 (8th Cir. 1997).

"The Trails Act and its implementing regulations require trail sponsors to assume 'full responsibility' for managing the right-of-way and for any legal liability arising out of the right-of-way. . . . As part of this responsibility, a trail sponsor must also make assurances that the right-of-way is kept available for 'future reconstruction and reactivation . . . for rail service.' . . . In order to meet these requirements, . . . the Trails Act and its implementing regulations require that a trail sponsor must have the same control over the entire right-of-way corridor that would be held by a railroad in order that the trail sponsor can ensure that any and all uses made of the right-of-way are consistent with the restoration of rail service." Illig v. United States, 58 Fed. Cl. 619, 631 (2003) (citing 49 C.F.R. §§ 1152.29(a)(2) & (a)(3)). Management of the right-of-way was granted to the State of South Dakota and the GF&P. The STB retains "exclusive and plenary jurisdiction" over the right-of-way. Plaintiffs' objections to GF&P's management decisions and restrictions imposed on plaintiffs' use of the right-of-way must be resolved through STB proceedings. The court does not have jurisdiction to determine the relative rights of the parties over the use of the easement.

## ORDER

Based on the above analysis, it is hereby

ORDERED that defendants' renewed motion to dismiss (Docket 18) pursuant to Fed. R. Civ. P. 12(b)(1) is granted.

IT IS FURTHER ORDERED defendants' renewed motion to dismiss (Docket 18) pursuant to Fed. R. Civ. P. 12(b)(6) is denied as moot.

IT IS FURTHER ORDERED defendants' alternate motion for summary judgment (Docket 18) pursuant to Fed. R. Civ. P. 12(d) and Fed. R. Civ. P. 56 is denied as moot.

IT IS FURTHER ORDERED that plaintiffs' amended complaint (Docket 13) is dismissed with prejudice.

Dated March 29, 2015.

BY THE COURT:

/s/ *Jeffrey L. Viken*
JEFFREY L. VIKEN
CHIEF JUDGE